IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES A. WEIMER
333 East Brown Avenue
Bellefontaine, Ohio 43311

    Plaintiff,

v.

HONDA OF AMERICA MFG., INC.
c/o Statutory Agent Corporation
52 East Gay Street
Columbus, Ohio 43215

    Defendants.

CASE NO. 2:06 cv 844

JUDGE JUDGE FROST

MAGISTRATE JUDGE

MAGISTRATE JUDGE KING

FILED
JAMES BONINI
CLERK

06 OCT -6 PM 3:43

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

## COMPLAINT
### (with Jury Demand)

NOW COMES Plaintiff James A. Weimer and proffers this Complaint for damages against Defendants Honda of America Mfg., Inc. ("Honda").

### THE PARTIES

1. Plaintiff is a natural person residing in Logan County, Ohio.

2. Defendant Honda is an Ohio corporation with facilities in Union County, Ohio, and

### JURISDICTION AND VENUE

3. Count I is brought pursuant to the laws of the United States, therefore the Court has jurisdiction pursuant to 28 U.S.C. §1331. Counts II and III arise out of the same core of operative facts, and therefore are entitled to supplemental jurisdiction pursuant to 28 U.S.C. §1367.

4. Venue is proper pursuant to 28 U.S.C. §1391, due to the fact that the Defendant has a production facility in Union County, Ohio, at which all of the events in question took place.

## FACTUAL BACKGROUND

5. Plaintiff was employed by Defendant as a Production Associate at its Marysville Auto Plant facility from May of 2001 until his discharge on or about April 20, 2006.

6. On or about February 21, 2006, Plaintiff was struck in the head in the normal course of his job duties by a hatchback being closed by a co-worker.

7. Plaintiff was delayed in reporting his injury to Honda's Medical Department by his supervisors, who demanded he stay on the line for approximately 45 minutes until he could be relieved.

8. Plaintiff then went to Honda's Medical Department to report the injury and be looked at by the nurse, who immediately had him driven to Union Memorial Hospital for examination. He was examined, and told he had a concussion, but was released to go back to work if he felt was able. Upon return just before the end of his shift, his supervisors sent him home. Plaintiff was also ordered to attend an examination the next morning with Health Partners, Honda's on-site medical providers.

9. On the morning of February 22, 2006, Weimer attended an examination with Health Partners at Honda. Weimer was experiencing severe head and neck pain, dizziness, as well as having difficulty focusing his right eye (and noticed effects to his night vision, as well). Health Partners ordered him off of work, and sent him to Mary Rutan Hospital for a follow-up exam.

2

10. Later on February 22, 2006, Dr. Mackey at Mary Rutan Hospital examined Plaintiff and ordered him off of work and to again be examined by Health Partners on Monday, February 27, 2006.

11. On February 27, 2006, Plaintiff attended an examination at Health Partners. Plaintiff was still experiencing severe head and neck pain, and had uneven vision in the eye test. Health Partners instructed Plaintiff that he was to remain off of work. When Plaintiff asked about Honda's necessary leave and medical certification paperwork, Health Partners stated clearly that they would take care of the paperwork, and that he need not worry. At this examination, Health Partners referred Plaintiff to a neurologist and an eye specialist for follow-up examinations.

12. Upon being examined by the aforementioned specialists, it was determined that the vision problems experienced by Plaintiff were not as a result of a lingering head injury, but were eye-related. At first, specialists thought that Plaintiff had two retinal tears, but later (on March 15, 2006) found that he had only congenital "folds" to his retina that were likely disturbed by the blow to the head.

13. On March 16, 2006, immediately after the diagnosis of retinal folds, Plaintiff was released by Health Partners to go back to work, and immediately began working again.

14. On or about March 31, 2006, Plaintiff was called off of the line to a meeting with his Coordinator and a representative from Honda's Associate Relations Department. He was questioned at length as to the nature of the incident that caused his injury, and as to his whereabouts and what he had been doing on a daily basis during the time he was ordered off of work by Health Partners in February and March of 2006. Plaintiff responded honestly to all questions, including stating that he had done nothing but sat around with severe head pain

3

for the first few days he was off, that he saw ten doctors in sixteen days, and that he had stayed off of work because Health Partners' physicians had ordered him to stay off of work. Plaintiff was told that he had allegedly been observed by "a neighbor" performing work on the porch area of his home during the time off, which plaintiff immediately denied. Plaintiff was then sent home "suspended pending further investigation."

15. Honda kept Plaintiff on suspension until April 20, 2006, when he was called by John Lammert of Honda Associate Relations and informed that he was discharged for "violating Family Leave."

16. Plaintiff was offered, and accepted, the chance to have a Review Panel look at the reasons for his discharge. Under Honda's Employee Handbook policies, which Honda has followed as a matter of past practice, had a majority of the Review Panel voted to reinstate Plaintiff, he would have had his employment reinstated, with all seniority and back pay.

17. Honda both solicits and encourages its employees to provide negative information regarding those who take Family Leave time and/or pursue Workers Compensation benefits.

18. Plaintiff filed a claim for Workers Compensation benefits at the time of or immediately after the incident referred to in ¶6 above.

19. Health Partners is an entity who gives services only to Honda, does so only for Honda employees, and whose services are provided on Honda's premises. In addition, Honda requires any employee injured at work to report to and be examined by Health Partners whenever possible. Health Partners is, therefore an agent of Honda.

20. Plaintiff's counsel both faxed and mailed a letter to Honda's Legal Department on May 30, 2006, informing Honda that Plaintiff was alleging that his discharge was in retaliation for his pursuit of a Workers Compensation claim in violation of RC §4123.90.

4

21.     At the commencement of the leave that began on February 21, 2006, Plaintiff had worked at least 1,250 hours in the prior twelve (12) months.

### COUNT I
### VIOLATIONS OF FAMILY AND MEDICAL LEAVE ACT ("FMLA")
### 29 U.S.C. §2601 et seq.

22.     Plaintiff reasserts and reincorporates each and every allegation contained in ¶¶1-21 above as if fully rewritten here.

23.     Plaintiff is an "eligible employee" as defined by 29 U.S.C. §2611(2).

24.     Defendants, each one, is an "employer" as defined by 29 U.S.C. §2611(4)(A).

25.     Plaintiff's leave that began on February 21, 2006, was for a "serious health condition" as defined by 29 U.S.C. §2611(11)(B).

26.     Defendants violated the FMLA by using FMLA-protected leave time as a negative factor in discharging Plaintiff, and by retaliating against Plaintiff for his use of FMLA leave time.

27.     Defendants lacked good faith and/or reasonable grounds to believe that it had not violated the FMLA in its discharge of Plaintiff.

28.     Defendants' violations of the FMLA entitle Plaintiff, pursuant to 29 U.S.C. §2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys fees and costs of bringing this litigation, in a amount to be determined at trial, but in any event not less than $250,000.00, as well as the equitable remedy of reinstatement and/or front pay, whichever is appropriate.

5

## COUNT II
## RETALIATION FOR PURSUIT OF A WORKERS COMPENSATION CLAIM
## ORC §4123.90

29. Plaintiff reasserts and reincorporates each and every allegation contained in ¶¶1-42 above as if fully rewritten here.

30. Plaintiff was subject to undue surveillance and scrutiny because he had suffered a Workers Compensation injury.

31. Honda both solicited and encouraged Harmon and Lammert to provide and disseminate false information regarding Plaintiff to affect Plaintiffs discharge.

32. All of Honda's negative actions towards Plaintiff were as a result of plaintiff's pursuit of a Workers Compensation claim.

33. Honda's violation of ORC §4123.90 entitles Plaintiff to monetary damages which include back pay and benefits, and attorneys fees and costs of bringing this litigation, in a amount to be determined at trial, but in any event not less than $250,000.00, as well as the equitable remedy of reinstatement and/or front pay, whichever is appropriate.

## COUNT III
## WRONGFUL DISCHARGE IN VIOLATION OF OHIO PUBLIC POLICY

34. Plaintiff reasserts and reincorporates each and every allegation contained in ¶¶1-47 above as if fully rewritten here.

35. The State of Ohio has a public policy against discharging an employee as a result of unlawful discharge in retaliation for the pursuit of a Workers Compensation claim.

36. Discharge of an individual under circumstances such as those involved in Defendant Honda's discharge of Plaintiff would jeopardize the public policy set forth in ¶35 above.

37. The motivation and determining factor in Defendant Honda's discharge of each of the Plaintiffs was its opposition to the public policy set forth in ¶35 above.

38. Defendant Honda had no overriding business justification for discharging Plaintiff sufficient to overcome the public policy set forth in ¶35 above.

39. Defendants Honda's wrongful discharge of Plaintiff entitle Plaintiff to compensatory damages, punitive damages, and attorneys fees and the costs of bringing this action, in an amount to be determined at trial, but in any event not less than $250,000.00.

WHEREFORE, Plaintiff demands,

for Count I, monetary damages including back pay and benefits, statutory liquidated damages, and attorneys fees and costs, in an amount to be determined at trial, but in any event not less than $250,000.00, as well as the equitable remedy of reinstatement or front pay, whichever is appropriate;

for Count II, monetary damages including back pay and benefits, and attorneys fees and costs, , in an amount to be determined at trial, but in any event not less than $250,000.00, as well as the equitable remedy of reinstatement or front pay, whichever is appropriate; and,

for Count III, compensatory and punitive damages, and attorneys fees and costs in an amount to be determined at trial, but in any event not less than $250,000.00.

## JURY DEMAND

Plaintiff demands that a jury decide Counts I and III, and acknowledges that Count II and the issue of liquidated damages under Count I must be decided by the Court.

Respectfully Submitted,

*/s/ Patrick M. Watts*
Patrick M. Watts (0075099)
Trial Attorney for Plaintiff
Gary A. Reeve (0064872)
Kennedy Reeve & Knoll
98 Hamilton Park
Columbus, Ohio 43203
(614) 228-2050