UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES A. WEIMER,

        Plaintiff,                       Case No. 2:06-cv-844
                                               JUDGE GREGORY L. FROST
    v.                                    Magistrate Judge Norah McCann King

HONDA OF AMERICA MFG., INC.,

        Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of the following filings:

(1) a motion for summary judgment (Doc. # 25) filed by Plaintiff, a memorandum in opposition (Doc. # 28) filed by Defendant, and a reply memorandum (Doc. # 32) filed by Plaintiff; and

(2) a motion for summary judgment (Doc. # 26) filed by Defendant, a memorandum in opposition (Doc. # 30) filed by Plaintiff, and a reply memorandum (Doc. # 33) filed by Defendant.

For the reasons that follow, this Court **DENIES** Plaintiff's motion for summary judgment (Doc. # 25), **GRANTS** Defendant's motion in regard to Plaintiff's state law claims (Doc. # 26), and **DENIES** Defendant's motion in regard to Plaintiff's federal claim and its possible accompanying award of back pay.

1

## I. Background[1]

Plaintiff, James A. Weimer, is a former employee of Defendant, Honda of America Manufacturing, Inc., who worked in the vehicle assembly department at Defendant's Marysville Auto Plant.  On February 21, 2006, Plaintiff was working on the assembly line when another worker pulled a trunk lid or tailgate down onto Plaintiff's head.  After reporting the incident to his supervisor, Plaintiff saw Defendant's in-plant nurse, who had a security guard drive Plaintiff to a hospital emergency room.  Plaintiff was diagnosed with a concussion and muscle strain.

Pursuant to hospital instructions, Plaintiff went the next day to Health Partners, an association of physicians located on Defendant's Marysville property and with which Defendant has a contract.  After examining Plaintiff, a Health Partners doctor ordered him off work pending additional assessment and referred him to Mary Rutan Hospital.  There, the emergency room doctor ordered Plaintiff off work.  Eventually, a Health Partners doctor apparently ordered Plaintiff off work until he could be seen by various specialists.

According to Plaintiff, he asked Health Partners doctors about completing necessary paperwork to obtain leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*., and was told that "Health Partners would take care of it."  (Doc. # 25-4 ¶ 3.)

---

[1] The Court has culled the facts set forth in the Background section of this Opinion and Order based on proper summary judgment evidence before the Court and on the parties' briefing. Use of the latter has proven necessary because the majority of the factual representations contained within the parties' briefing is allegedly drawn from deposition transcripts and exhibits that the Court cannot consider for the reasons explained in Section II.B, *infra*.  Accordingly, the Court has attempted to set forth a general statement of the facts sufficient to inform any reader as to the broad details of this litigation.  The general account of alleged events contained within the background statement should not be read as setting forth facts necessarily even before the Court for summary judgment purposes.  In other words, much appears to be missing from this account, while some of the included details necessary to present a coherent picture of the alleged facts are not part of what the Court can consider in today's analysis.

Plaintiff went out on FMLA leave until he was cleared to return to his job on March 15, 2006. Plaintiff reported to work the next day, March 16, 2006.

Following his return to work, Plaintiff was questioned concerning allegations that he spent a portion of his FMLA leave building a front porch on his home.  Defendant had allegedly received a tip to that effect from another employee, who had purportedly observed Plaintiff engaging in such work, and Defendant was investigating the allegation.  As part of that investigation, Defendant obtained a surveillance video showing Plaintiff carrying planks of wood, installing them, and using a drill while working on his porch on March 15, 2006. Defendant asserts that when questioned about the porch-building allegations, Plaintiff admitted that he "dicked around the house & yard, worked on stuff like yard work, etc, worked on house." (Doc. # 26-8, Blanton Aff. ¶ 2.)  Defendant terminated Plaintiff's employment on April 20, 2006, allegedly for making misrepresentations concerning his FMLA leave in contravention of the company's Associate Standards of Conduct.

Plaintiff then filed the instant suit on October 6, 2006.  (Doc. # 2.)  In his three-count Complaint, Plaintiff asserts federal claims under the FMLA, a state law claim for violation of Ohio Rev. Code § 4123.90, and a state law public policy claim predicated on that state statute. (Doc. # 2 ¶¶ 22-39.)  Both sides have filed a motion for summary judgment.  (Docs. # 25, 26.) The parties have completed briefing on these motions, which are now ripe for disposition.

## II.  Discussion

### A.  Standard Involved

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

**B. Analysis**

The only remaining claim in this litigation is Plaintiff's FMLA claim.[2] The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for ... a serious health condition that makes the employee unable to perform

---

[2] As noted, Plaintiff also asserted in his complaint a claim under Ohio Rev. Code § 4123.90 and a related public policy claim . In his memorandum in opposition, Plaintiff stated that he did not oppose summary judgment "on the claim made pursuant to [Ohio Rev. Code §] 4123.90," which disposes of these two claims. (Doc. # 30, at 1 n.1.) Accordingly, the Court finds Defendant's motion for summary judgment well taken in this regard.

the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The Sixth Circuit has explained that "to invoke the protection of the FMLA, an employee must provide notice [to the employer] and a qualifying reason for requesting the leave." *Brohm v. JH Properties Inc.*, 149 F.3d 517, 522 (6th Cir. 1998) (citing *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 762 (5th Cir. 1995)). An employee need not specifically mention the FMLA to provide adequate notice. *Id*. Rather, for adequate notice, the employee need only convey information that is reasonably adequate to inform the employer that he is making a request to take leave for a serious health condition that renders him unable to perform the duties of employment. *Id*.

As Defendant notes in its briefing, Plaintiff's pleading fails to make clear whether he is proceeding under 29 U.S.C. § 2615(a)(1) or (a)(2).[3] In his memorandum in opposition, however,

---

[3] Such precise pleading might in fact be difficult. For example, although not always consistent in its description of the FMLA, the Sixth Circuit has explained that § 2615(a)(1) and (a)(2) *both* constitute retaliation provisions. *Humenny v. Genex Corp.*, 390 F.3d 901, 905 (6th Cir. 2004). Another judge within this district has previously noted the "current, confusing state of FMLA law" and attempted to reconcile the problematic use of applying the labels "interference," "discrimination," and "retaliation" to FMLA claims. *Bradley v. Mary Rutan Hosp. Ass'n*, 322 F. Supp. 2d 926, 938 (S.D. Ohio 2004). That judge concluded that a single framework for all FMLA claims made sense based, in part, on the conclusion that "courts should not have to pigeonhole [a] plaintiffs' claims, fit them under either the language of § 2615(a)(1) or (2), or create a seemingly new cause of action for each label." *Id*. at 940 n.16. This Court need not and will not attempt to untangle the FMLA quandary here, but simply notes that the Sixth Circuit has recognized both claims regardless of the specific label and statutory provision involved. The appellate court has also stated that although *Bradley*'s construction of an interference claim employs different language in the fifth element than that used in *Cavin*, "it does not conflict with *Cavin*, and, in fact, adds depth to the fifth element articulated in *Cavin*." *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 447 (6th Cir. 2007). Thus, the Sixth Circuit concluded:

> If an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled. We, therefore, have no objection to rephrasing the fifth element of an interference claim as being that the employer has "somehow used the leave against her and in an unlawful manner, as provided in either the statute *or* regulations."

5

Plaintiff defends his claim by addressing § 2615(a)(1). (Doc. # 30, at 8.) Accordingly, this Court will address his FMLA claim beginning under § 2615(a)(1).[4]

To prevail on his interference claim under § 2615(a)(1), Plaintiff must prove by a preponderance of the evidence that (1) he is an "eligible employee," (2) Defendant is an "employer," (3) he was entitled to take FMLA leave, (4) he gave proper notice of his intention to take leave, and (5) the employer somehow used the leave against him and in an unlawful manner, as provided in either the FMLA or its regulations. *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005); *Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003); *see also Bradley v. Mary Rutan Hosp. Assoc.*, 322 F. Supp. 2d 926, 940 (S.D. Ohio 2004).

Under the retaliation aspect of his FMLA claim, Plaintiff must prove that (1) he availed himself of a protected right under the FMLA, (2) Defendant knew of his exercise of a protected right, (3) he was adversely affected by an employment decision made by Defendant, and (4) there was a casual connection between the exercise of the protected right and the adverse employment action. *See Hoge v. Honda of America Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004) ( identifying " 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)"); *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990). *See also DeBoer v. Musashi Auto Parts, Inc.*, 124 F. App'x 387, 391 (6th Cir. 2005); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

---

*Id.* (quoting *Bradley*, 322 F. Supp. 2d at 940). Retaliatory discharge is cognizable under both § 2615(a)(1) and (a)(2). *Id.* at 447 n.2.

[4] Proceeding under § 2615(a)(1) as opposed to under § 2615(a)(2) arguably does not make a difference in regard to some aspects of the present case, given the often blurred nature of FMLA claims and the precedent discussed in footnote 2, *supra*.

There is no dispute that Plaintiff was an eligible employee qualified to take proper FMLA leave under 29 U.S.C. § 2612(a)(1). *See* 29 U.S.C. § 2611(2)(A)(i), (ii). There is also no dispute that Defendant is an eligible employer under 29 U.S.C. § 2611(4) or that Plaintiff provided proper notice of his intent to take FMLA leave under 29 C.F.R. §§ 825.302 and .303. The only issues apparently in dispute are whether Plaintiff had a serious health condition within the meaning of the FMLA and whether Defendant impermissibly used his FMLA leave as a negative factor informing his discharge.

Defendant argues that it terminated Plaintiff's employment because he engaged in dishonesty. The company posits that by making misrepresentations as to his condition–*i.e.*, by failing to communicate to his physicians or to Defendant that he was able to work while on leave–Plaintiff violated Defendant's Associate Standards of Conduct. Thus, Defendant argues, Plaintiff's termination was not for having used FMLA leave, but for having abused it.

Plaintiff of course disagrees with this conclusion and in fact seeks summary judgment on the grounds that Defendant discharged him because he took FMLA leave. The essence of Plaintiff's argument is that even though he considered himself able to return to work, he was unable to do so without permission from his doctor. He asserts that the did not even want FMLA leave and that he was simply ordered off work by Health Partners' doctors, who completed the certifying paperwork based on their desire to have him off work until examined by specialists. Thus, Plaintiff concludes that Defendant is attempting to use the language in its FMLA paperwork to entrap him into "an 'involuntary lie' regarding his incapacity." (Doc. # 32, at 2.)

Additionally, Plaintiff argues that working on a front porch at his residence does not mean that he was able to perform his functions as an employee. Rather, Plaintiff asserts, he

7

"may have been physically able to perform his job at some given moment after February 22, 2006, but was prevented from doing so by his doctors' restrictions." (Doc. # 25, at 13.) Targeting these restrictions, Plaintiff declares in an affidavit that "[i]t was [his] understanding that [he] was unable to return to work without a release from Health Partners." (Doc. # 25-4, Weimer Aff. ¶ 6.)

To defeat Plaintiff's arguments, Defendant directs this Court to the case of *Couch v. Whirlpool Corporation*, 447 F.3d 984 (7th Cir. 2006). In *Couch*, a defendant employer had terminated a plaintiff employee for using FMLA leave to take a vacation. The termination was based on the employer's honest suspicion that the employee had misused his doctor-supported FMLA leave; similar to the instant case, a videotape showed the *Couch* plaintiff using a portion of his FMLA leave to complete work at his home. Falsifying the reason behind this employee's FMLA leave violated a company rule, which the company cited as the reason for the employee's discharge. In upholding the grant of summary judgment for the employer, the Seventh Circuit explained that "an employer's honest suspicion that the employee was not using his medical leave for its intended purpose is enough to defeat the employee's substantive rights FMLA claim." *Id.* at 986 (citing *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 681 (7th Cir. 1997)).

Similarly, Defendant also notes that another judge in this District held against an employee who took FMLA leave under false pretenses in *Stonum v. U.S. Airways*, 83 F. Supp. 2d 894 (S.D. Ohio 1999). The plaintiff in *Stonum* had requested and obtained FMLA leave to care for her ailing mother, but an investigation by the employer revealed that she was not using her leave to provide care for the parent. This resulted in the employee's termination, which led

to a lawsuit, the disposition of which turned on the employer's justification of an honest belief that the employee had abused her FMLA leave.

Even in light of the foregoing case law, this Court finds that neither party can obtain summary judgment here. It is true that the FMLA does not provide an employee with carte blanche to obtain proper leave and then abuse that leave. This is made clear in the statutory scheme's conditioning of an employee's right to reinstatement following FMLA leave on that "eligible employee . . . tak[ing] leave . . . for the intended purpose of the leave." 29 U.S.C. § 2614(a)(1). Therefore, an employee who initially obtains valid leave for a qualifying reason and whose doctor supports continued leave, can nonetheless lose the protections of the FMLA when he or she does not use the leave for its intended purpose. *See Kariotis*, 131 F.3d at 681.

Under the facts of this case, however, the Court cannot say as a matter of law that Plaintiff did *not* use his FMLA leave for its intended purpose. The Court also cannot say, however, that as a matter of law, Plaintiff *was* using his leave for its intended purpose. Three reasons support these conclusions.

First, there is a factual dispute as to whether Plaintiff engaged in fraudulent conduct in violation of company policy. As noted, Plaintiff has offered evidence that he believed that he was unable to return to work without a release from his doctor. Necessarily crediting this self-serving evidence, the Court must recognize the inference that although Plaintiff thought that he was capable of performing his job, he thought that the option of resuming that job was not available to him until he had satisfied the demands of his doctor. In other words, unlike deceitful plaintiffs in cases such as *Couch* and *Stonum*, there is the possibility that Plaintiff was not providing false information to Defendant here because he did not misrepresent the leave-

motivating factor (*i.e.*, an injury or the need to take care of a family member)–there is no dispute that Plaintiff was injured–and he did not take leave under false pretenses in order to engage in other activities.  It is important to note that Plaintiff's credibility in this regard might be called into question by the fact that he allegedly did not inform his doctors that he was building a porch.  A jury must decide whether Plaintiff thought he was complying with company policy or whether he was an opportunistic schemer taking advantage of the system in order to have time to enhance the curb appeal of his home.[5]

Second, there is a factual dispute as to whether Plaintiff even exceeded the scope of his leave.  The parties' opposing briefs insufficiently target the core issue in this case: whether the porch-building activities in which Plaintiff engaged while on leave speaks to his ability to perform the essential functions of his job with Defendant.  The Sixth Circuit has explained that what functions of a job are "essential" are a factual questions.  *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1005 (6th Cir. 2005).  But the evidence to which the parties direct this Court is insufficient to enable the Court to conclude whether Plaintiff's ability to build a porch informs his ability to perform the duties of his job.  The parties have failed to present sufficient evidence of what tasks and demands constituted Plaintiff's job with Defendant.  Absent this information, the Court cannot say whether the work Plaintiff apparently performed on his porch demonstrated that he could perform the essential tasks of his job.  He may or may not have been able to perform vigorous work to a level that still fell short of the demands of his

---

[5] The Court recognizes the argument that even if Plaintiff did not intend to engage in dishonest conduct in contravention of company policy, Defendant may have nonetheless held a good faith belief that Plaintiff has engaged in such misconduct.  But as discussed in point three, there is a question as to whether Defendant actually held such an honest belief that separately precludes summary judgment.

job. If the latter is true, then Plaintiff may have indeed been using his FMLA leave for its intended purpose even while engaging in the less demanding activity of working on his porch.

Third, there is a factual dispute as to whether Defendant honestly believed that Plaintiff exceeded the scope of his leave. If Plaintiff was using his FMLA leave properly, a possible conclusion that turns on the unresolved factual issue identified above, then Defendant's investigation resulting in its purported good faith belief as to Plaintiff's allegedly inconsistent activities could ring hollow. A flawed investigation can result in a mistaken but honest belief. But if Defendant knew that Plaintiff's purported on-leave activities did not rise to the level of his job functions, then regardless of whether the investigation is mistaken or correct as to his on-leave activities, the investigation's conclusions cannot provide the honest belief on which Defendant relies. Thus, despite arguing that the familiar burden-shifting framework does not apply, Plaintiff has nonetheless presented this Court with a factual issue as to whether Defendant's proffered reason for his discharge is mere pretext.[6] The temporal proximity between Plaintiff's leave and his discharge as well as the lack of a clear correlation between Plaintiff's on-leave activities and his on-the-job duties combine to create a jury issue as whether Defendant discriminated against Plaintiff.

Given the foregoing genuine issues over material facts–which the Court notes arises in part from a sloppy and incomplete record, as discussed below–the Court cannot say that either party must prevail as a matter of law. Accordingly, the Court finds neither motion for summary

---

[6] There is also a factual dispute as to whether Plaintiff admitted to building his porch while on leave. Although there was other corroboration that Plaintiff was apparently building a porch, Defendant's purported reliance on a possibly non-existent admission calls into question the good faith of the investigation. There can be no reasonable reliance on a particularized factual admission that does not exist, and unreasonable reliance cannot produce an honest belief.

judgment well taken in regard to Plaintiff's FMLA claim.

This leaves one issue for disposition. As an alternative to obtaining summary judgment on the entirety of Plaintiff's FMLA claim, Defendant moves for summary judgment to limit Plaintiff's potential damages based on the after-acquired evidence doctrine. The company represents that testimony by Plaintiff at his deposition indicates that he falsified information on his application to obtain employment with Defendant, in violation of company policy. Defendant argues that this means that any back pay that Plaintiff could obtain in connection with his FMLA claim would be limited to the time between his discharge and the date of his deposition.

The Court need not discuss any possible application of the after-acquired evidence doctrine and cannot grant summary judgment on this issue because Defendant has failed to supply the Court with the relevant summary judgment evidence supporting its argument. Just as it did in making its argument on the merits of Plaintiff's FMLA claims, Defendant again directs this Court to selections from the alleged transcribed deposition of Plaintiff to support its contention of admissions. But the Court cannot consider these deposition pages.

In an apparent attempt to comply with Fed. R. Civ. P. 56 and S.D. Ohio Civ. R. 7.2, Defendant has filed portions of the deposition transcript and select exhibits with the company's summary judgment motion. (Docs. # 26-3, 26-4.) This deposition transcript, as well as the version Plaintiff filed (Doc. # 30-4), both lack an accompanying signed court reporter certification, which is an "essential portion[] of [the] transcript[]." S.D. Ohio Civ. R. 7.2(e). The error means that the transcripts filed with this Court fail to qualify as proper summary judgment evidence under Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 30(f)(1); *Soliday v. Miami*

*County, Ohio,* No. C-3-91-153, 1993 WL 1377511, at *5 n.4 (S.D. Ohio Nov. 22, 1993) (stating that "the Court cannot consider" deposition testimony referenced in summary judgment reply memorandum but not filed with court); *Moore v. Florida Bank of Commerce*, 654 F. Supp. 38, 41 n.2 (S.D. Ohio 1986) (unauthenticated deposition not filed with court is not proper material under Rule 56); *Podlesnick v. Airborne Express, Inc.*, 550 F. Supp. 906, 910 (S.D. Ohio 1982) (depositions not filed with court but referred to in summary judgment memoranda were not considered in court's decision). *See also Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) (discussing unauthenticated deposition extracts).

The Court therefore cannot consider the uncertified deposition transcripts.[7] *See Harris v. City of St. Clairsville, Ohio*, No. 07-3124, 2008 WL 1781236, at *3 (6th Cir. Apr. 17, 2008) (affirming refusal to consider uncertified depositions in summary judgment analysis). Absent a transcript, there is no support for Defendant's asserted right to summary judgment on Plaintiff's possible damages.

### III. Conclusion

The Court **DENIES** Plaintiff's motion for summary judgment (Doc. # 25), **GRANTS** Defendant's motion for summary judgment in regard to Plaintiff's state law claims (Doc. # 26), and **DENIES** Defendant's motion for summary judgment in regard to Plaintiff's FMLA claim

---

[7] Defendant cannot evade its error by seeking refuge in the fact that the Local Civil Rules permit the filing of "deposition excerpts" as attachments to summary judgment memoranda. *See* S.D. Ohio Civ. R. 7.2(e). That same rule also requires that "[e]vidence submitted . . . shall be limited to that necessary for decision and shall include only essential portions of transcripts or exhibits referenced in the memorandum." S.D. Ohio Civ. R. 7.2(e). The court reporter certification is an essential portion of a transcript necessary for decision because it qualifies any submitted transcript pages as summary judgment evidence.

and to application of the after-acquired evidence doctrine.

**IT IS SO ORDERED**.

                                              /s/ Gregory L. Frost  
                                          GREGORY L. FROST  
                                          UNITED STATES DISTRICT JUDGE